IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RENEE JACKSON TAYLOR, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CARDINAL HEALTH 414, LLC, ) <br> ) <br> Defendant. ) | Case No. 2:20-cv-02004-JPM-tmp |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Cardinal Health 414, LLC's ("Cardinal Health") Motion for Summary Judgment, filed on October 30, 2020. (ECF No. 38.) Cardinal Health moves for summary judgment in its favor with respect to Plaintiff Renee Jackson Taylor's Tennessee Human Rights Act ("THRA") race and gender discrimination claims under both her failure to hire theory and her termination theory. (See generally id.) Taylor filed a Response on November 18, 2020. (ECF No. 43.) Cardinal Health filed a Reply on November 25, 2020. (ECF No. 52.)

For the reasons set forth below, Cardinal Health's Motion for Summary Judgment is **GRANTED**.

**I.    BACKGROUND**

  *A. Factual Background*

This THRA case arises out of Cardinal Health's May 2018 failure to hire Taylor for the position of Pharmacy Manager and October or November 2018 termination of Taylor. Cardinal Health is a nuclear pharmacy business, which is a specialized pharmacy practice area.

(Defendant's Statement of Undisputed Material Facts ("Def. SUMF"), ECF No. 38-2 ¶ 1.) Taylor is an African-American female. (Id. ¶ 3.) She began working as a Staff Pharmacist at Cardinal Health's Memphis nuclear pharmacy location in May 2010. (Id.) Taylor resigned her full-time employment as Staff Pharmacist in February 2016 to accept a position as Pharmacy Manager at a local CVS Pharmacy. (Id. ¶ 11.) Taylor continued to work at Cardinal Health as a PRN Pharmacist on an "as needed" basis. (Id. ¶ 14.)

On May 14, 2018, Taylor applied for the Pharmacy Manager position at Cardinal Health's Memphis location. (Id. ¶ 18.) Seventeen candidates applied for the position, including both internal and external candidates. (Id. ¶ 21.) Ultimately, Albert Russell was hired as Pharmacy Manager. (Id. ¶ 31.) Russell began working as Pharmacy Manager at the Memphis location on October 1, 2018. (Id.) Russell was an internal candidate. (Id. ¶ 25.) He had been a pharmacist since 1997, had worked at Cardinal Health since 2002 and had been a Pharmacy Supervisor at Cardinal Health's Buffalo, New York location. (Id.)

As a PRN Pharmacist, Taylor worked fourteen days at Cardinal Health in 2017 and only one day at Cardinal Health in 2018. (Id. ¶ 38–39.) When asked in August 2018 about her availability to work in October, November and December 2018, Taylor was unable to work any of the requested days. (Id. ¶ 41.) Russell discussed Taylor's lack of availability with Joseph Lukacs, Zone Operations Director for the Memphis region, and they decided to terminate Taylor's PRN status. (Id. ¶ 44.) On or about October 31, 2018,[1] Taylor's employment was terminated in Cardinal Health's Workday system. (Id. ¶ 45.) On November 30, 2018, Taylor

---

[1] Taylor disputes that the date of her termination was October 31, 2018 because Russell testified that he did not recall the date of her termination. (Taylor's Response to Def. SUMF, ECF No. 45 ¶ 44.) But Cardinal Health's Workday system objectively demonstrates that the date of her termination was October 31, 2018. (ECF Nos. 38-4 at PageID 373 & 38-8 at PageID 577.)

found out her PRN status had been terminated after the Memphis pharmacy's Radiation Safety Officer, Jessica Milloway, offered to pick up her keys, badge and gate checker. (Id. ¶ 47.)

   B. *Procedural Background*

Taylor filed her Complaint on July 31, 2019 in the Chancery Court of Shelby County, Tennessee for the Thirtieth Judicial District at Memphis. (ECF No. 1-1.) Taylor asserts causes of action for unlawful gender and race discrimination in violation of the THRA. (Id. ¶¶ 24–25.) Cardinal Health removed the case to the United States District Court for the Western District of Tennessee on July 3, 2020. (ECF No. 1.) Taylor filed an Amended Complaint on February 28, 2020, asserting specifically that Cardinal Health's actions in failing to hire her for the position of Pharmacy Manager and terminating her employment constitute unlawful race and gender discrimination under the THRA. (ECF No. 16 ¶¶ 35–39.)

Taylor moved to amend her Complaint again on October 1, 2020, seeking to add a claim under the Equal Protection Act and an additional claim under the THRA. (ECF No. 32.) The Court entered an Order Denying Plaintiff's Motion to Amend Complaint on October 29, 2020. (ECF No. 37.) The Court found that each new cause of action or claim that Taylor sought to add to her Complaint was futile because each claim was barred by the applicable statute of limitations. (Id. at PageID 251–52.)

Cardinal Health filed the instant Motion for Summary Judgment on October 30, 2020. (ECF No. 38.) Taylor filed a Response on November 18, 2020. (ECF No. 43.) Cardinal Health filed a Reply on November 25, 2020. (ECF No. 52.)

**II.   LEGAL STANDARD**

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448–49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587. "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted).

In order to "show that a fact is, or is not, genuinely disputed," a party must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." L.R. 56.1(b)(3); Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex, 477 U.S. at 325)). "Credibility

4

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 Fed. Appx. 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 251-52). Summary judgment "'shall be entered' against the non-moving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" Rachells v. Cingular Wireless Employee Servs., LLC, No. 1:08CV02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990)). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 251). "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Liberty Lobby, 477 U.S. at 247-254; Street v.

J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)). "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." Rachells, 2012 WL 3648835, at *2 (quoting Thomas v. Christ Hosp. and Med. Ctr., 328 F.3d 890, 894 (7th Cir. 2003)). Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient. See Mitchell, 964 F.2d at 584-85.

### III. ANALYSIS

Taylor asserts causes of action for race and gender discrimination under the THRA, arising out of Cardinal Health's decision not to hire her as Pharmacy Manager and the method of handling her termination from PRN status. (ECF No. 38-1 at PageID 264.) Under the THRA, "[i]t is a discriminatory practice for an employer to… [f]ail or refuse to hire or discharge any person… because of such individual's race… [or] sex[.]" Tenn. Code Ann. § 42-21-401(a)(1).

The McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden-shifting framework in employment discrimination cases applies to causes of action under the THRA. Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 593 (6th Cir. 2007) (citing Newman v. Fed. Express Corp., 266 F.3d 401, 406 (6th Cir. 2001)). Under McDonnell Douglas, Taylor "must submit evidence from which a reasonable jury could conclude both that she has established a prima facie case of discrimination and that the defendant's legitimate, nondiscriminatory reason for its action, if any, is pretext for unlawful discrimination." Vincent v. Brewer Co., 514 F.3d 489, 494 (6th Cir. 2007). Cardinal Health argues that Taylor cannot make out a prima facie case based on her failure-to-hire theory and that she cannot show that Cardinal Health's proffered reason for its decision to terminate her PRN status was pretextual.

(See generally ECF No. 38-1.)  The Court will address each of Taylor's theories of discrimination in turn.

A. *Failure-to-Hire*

To make out a prima facie case under her failure-to-hire theory, Taylor "must show that she (1) is a member of a protected class; (2) applied for a job and did not receive it; (3) was qualified for the job; and (4) was rejected in favor of a similarly situated applicant outside her protected class, or was otherwise treated differently than such an applicant." Jenkins v. Foot Locker Inc., 598 F. App'x 346, 349 (6th Cir. 2015).  Cardinal Health argues that Taylor cannot establish the third and fourth prongs of her prima facie case.  Specifically, Cardinal Health asserts that Russell was significantly more qualified than Taylor for the position. (See ECF No. 38-1 at PageID 265–70.)

Taylor argues that she was qualified because her evaluations while employed at Cardinal Health "speak to [her] initiative, attention to detail and goal driven conscientiousness" and that Cardinal Health cannot dispute that she "was at least minimally qualified for the position of Pharmacy Manager." (ECF No. 43 at PageID 604–05 (citing White v. Columbus Metro. Hous. Auth., 429 F.3d 232, 236 (6th Cir. 2005)).)  She further argues that Russell was similarly situated to her when he was offered the position. (Id. at PageID 605–06.)  Finally, Taylor characterizes Cardinal Health's proffered reason for not hiring her as "she was not the most qualified for the position" and argues that this is pretext because there were irregularities in Cardinal Health's hiring process. (Id. at PageID 608–11.)

The Court will first address the comparative qualifications of Russell and Taylor for the Pharmacy Manager position.  Russell, like Taylor, was an internal candidate. (Def. SUMF ¶

25.)[2]  Russell was a Pharmacy Supervisor at Cardinal Health's Buffalo, New York, location at the time he applied for the Pharmacy Manager role in Memphis.  (Id.)  Russell started working as a pharmacist in 1997 and started working for Cardinal Health in 2002.  (Id.)  Russell's duties as Pharmacy Supervisor at the Buffalo, New York, location were essentially the same duties as those of a Pharmacy Manager.  (Id. ¶ 26.)

Taylor began working as a Staff Pharmacist at Cardinal Health's Memphis nuclear pharmacy in May 2010, after her graduation from Pharmacy School.  (Id. ¶ 3.)  While employed as a Staff Pharmacist, Taylor's performance reviews demonstrate that she was receptive to feedback and developed as a pharmacist by getting licensed in Mississippi, creating a new inventory sheet for the Memphis Cardinal Health pharmacy and advising and training an intern.  (See ECF No. 43-1 ¶¶ 4–32.)  Her 2013, 2014 and 2015 Performance Reviews also, however, noted that she needed to demonstrate more leadership qualities, show more initiative and gain more confidence in her co-workers.  (Def. SUMF ¶¶ 8–10.)  After voluntarily resigning from her Staff Pharmacist position at Cardinal Health, Taylor accepted a position as a Pharmacy Manager at a local CVS Pharmacy.  (Id. ¶ 11.)  Taylor has never worked as a manager at a nuclear pharmacy.  (Id. ¶ 20.)  The nuclear pharmacy practice area is a specialized pharmaceutical practice that "involves the compounding and dispensing of radiopharmaceuticals for use in nuclear medicine diagnostic studies and therapeutic applications."  (Id. ¶ 1.)

Taylor has raised a genuine dispute of material fact as to whether she was minimally qualified for the Pharmacy Manager position.  A reasonable juror could find that the

---

[2] Although Taylor denies this paragraph of Defendant's Statement of Undisputed Material Facts, she does not appear to dispute the substance of the paragraph.  (ECF No. 45 ¶ 25.)  Instead, she concedes that Russell was a pharmacist longer than she was and then details her own qualifications for the position.  (Id.)

combination of Taylor's experience as a pharmacist at a nuclear pharmacy and her experience as a manager at a non-nuclear pharmacy minimally qualified her for the Cardinal Health Pharmacy Manager position, the job description of which includes overseeing the operational, financial and human resources activities of the assigned pharmacy. (Id. ¶ 17.)

Taylor has not, however, created a genuine dispute of material fact as to the fourth prong of her prima facie case. Taylor argues that her Tennessee and Mississippi licenses, familiarity with Cardinal Health's customers at the Memphis location and experience as a Pharmacy Manager at CVS Pharmacy rendered her at least as qualified as Russell, who was not licensed in Tennessee or Mississippi, had not worked at the Memphis location previously and had not previously served as a Pharmacy Manager at any location. (ECF No. 43 at PageID 605–07.)

Cardinal Health argues that Russell had significantly more experience than Taylor. (ECF No. 38-1 at PageID 268–69.) Cardinal Health points to the fact that Taylor had not worked as a full-time pharmacist at the Memphis location in more than two years and that there is a meaningful distinction between managing a retail pharmacy and managing a nuclear pharmacy. (Id. at PageID 268.) Furthermore, the Cardinal Health Pharmacy Manager position in Memphis oversees fifteen employees, including a radiation safety officer, whereas Taylor's CVS Pharmacy position oversees five employees who are all pharmacy technicians. (Id. at PageID 268–69.) Cardinal Health argues that Taylor was not similarly situated to Russell because he had at least a decade more experience as a pharmacist working in a nuclear pharmacy, in addition to his experience managing a nuclear pharmacy. (Id. at PageID 269.)

Although Taylor is correct that more years of work experience do not automatically mean that an individual has better qualifications for a role, Russell's experience is materially different from Taylor's for reasons other than his having worked as a pharmacist for longer than

9

Taylor.  See Stokes v. Detroit Pub. Schs., 807 F. App'x 493, (6th Cir. 2020) (finding that the plaintiff's "subjective opinion that more years of working automatically means better qualifications" was insufficient to demonstrate a genuine issue of material fact as to his evidence that he was more qualified than the individual the defendant hired).  Not only did Russell have significantly more experience as a pharmacist than Taylor did, he had more experience working as a staff pharmacist at a nuclear pharmacy and in a managerial position than she did.  Taylor also had no experience working in a managerial position at a nuclear pharmacy, whereas Russell had worked in a role with essentially the same duties as the Pharmacy Manager position at another Cardinal Health nuclear pharmacy location.  Because Russell had experience managing a nuclear pharmacy and Taylor had none, the Court finds that Taylor has failed to create a genuine issue of material fact as to whether Russell was similarly situated to her.

Even if Russell and Taylor were sufficiently similarly situated for Taylor to have established her prima facie case, Taylor cannot show that Cardinal Health's reasons for hiring Russell and not Taylor were pretextual.  "Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination."  Bender v. Hecht's Dep't Stores, 455 F.3d 612, 626 (6th Cir. 2006).  "In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with the evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment."  Id. at 626–27 (citing Jenkins v. Nashville Pub. Radio, 106 F. App'x 991, 995 (6th Cir. 2004)).  But where "there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter

applicant over the former." Id. at 627.  Because Russell's experience in a managerial position at a nuclear pharmacy would support a finding by a reasonable juror that he was at least as qualified as Taylor for the position, Taylor must demonstrate other probative evidence of discrimination to survive summary judgment.

Taylor argues that irregularities in Cardinal Health's hiring process create a genuine issue of material fact as to whether Russell was preselected for the position of Pharmacy Manager.  (ECF No. 43 at PageID 608–10.)  Taylor also asserts that Cardinal Health has only one other African-American employed in the position of Pharmacy Manager within the five states included in the Memphis region.  (Id. at PageID 610.)  In response to Plaintiff's arguments, Cardinal Health argues that the application Taylor submitted was different from the application Russell submitted because she submitted her application through Cardinal Health's website and was considered an external candidate, whereas Russell's was an internal candidate application.  (ECF No. 52 at PageID 747.)  The Court agrees with Cardinal Health that "[t]here is nothing nefarious about the difference in questions asked[.]"  (Id.)  Although the additional questions related to the candidate's willingness to submit to background and criminal record checks (see ECF No. 43 at PageID 608), it is reasonable for those questions to be asked of external candidates and not of internal candidates who presumably already underwent the requisite background checks prior to their initial employment with Cardinal Health.

The Court also agrees with Cardinal Health that Taylor's brief reference to the application of a third individual for the Pharmacy Manager position, Derrick Young, is irrelevant to this case.  (ECF No. 52 at PageID 748; see also ECF No. 43 at PageID 609.)  Taylor does not cite to any support in the record for her assertions that Young had 28 years' experience in supervisory and nuclear positions.  (ECF No. 43 at PageID 609.)  There is insufficient

evidence in the record for the Court to determine that Young was so much more qualified for the position than Russell that Cardinal Health's apparent failure to consider his application in detail is probative of discriminatory animus.[3]

Taylor also argues that because Cardinal Health is inconsistent in describing whether Ghassan Agha, who was originally offered the position prior to Russell, withdrew from consideration or declined the offer, Russell must have been preselected for the position. (Id. at PageID 609–10.) This argument is not logical; regardless of whether Agha withdrew from consideration or declined Cardinal Health's offer, Taylor has offered no evidence that Agha was not initially selected for the position. No employer would preselect an individual for a position but first offer that position to a different individual.

Taylor briefly references an "inequality in pay between [Aliaksei] Khadunou and Taylor (he was paid as a preceptor, Taylor was not)." (Id. at PageID 611.) Taylor's argument is that she served as a pharmacy preceptor by assisting a student pharmacist in the transition from theoretical to practical work and was not compensated for that work. (Id. at PageID 598.) Khadunou, she contends, also served as a preceptor to student interns and received compensation. (Id.) Cardinal Health asserts that Taylor's sole evidence of a preceptor payment to Khadunou was a $500 "Special Performance Bonus" on September 4, 2015 and that all nonexempt employees across Cardinal Health received the same one-time bonus on that date, including Taylor. (ECF No. 52 at PageID 751.) Although Taylor has pointed to five occasions on which Khadunou was paid a $500 "Special Performance Bonus," (see ECF No. 51-2), Taylor has not demonstrated that the payment was for preceptor work; Khadunou's paystubs do not

---

[3] Taylor notes, without citation, that Young is a Howard University Graduate. (ECF No. 43 at PageID 609.) This does not, as a matter of evidence, prove to the Court that Young is African-American and that therefore a failure to consider his application could possibly demonstrate racial animus on the part of Cardinal Health.

mention anything about the justification for the bonus.  Furthermore, from 2015 through 2017, Khadunou made less than Taylor.  (Laura Garza Declaration, ECF No. 52-3 at PageID 769.)

Taylor finally states that "the Court should be compelled to consider the evaluations that glow in praise of Plaintiff, and simultaneously criticize Plaintiff for her failure to make her Caucasian colleagues accept her as their leader.  It was Plaintiff who was told to learn to 'trust' their motives… Finally, the termination of Plaintiff as PRN by text and thereafter cloaking it in secrecy.  The law may not require notice of termination but an eight year employment relationship would mandate that courtesy."  (ECF No. 43 at PageID 611.)  No reasonable juror could find, based solely on Taylor's subjective view that it was unfair to ask her to learn to trust her colleagues because they were all Caucasian, that there was any racial discriminatory animus behind Taylor's instructions to "gain more confidence in her staff and learn to trust their motives."  (ECF No. 52-1 ¶ 33.)  It would require another leap in logic to conclude that this instruction in Taylor's Fiscal Year 2014 performance review bore any connection to Cardinal Health's failure to hire her more than three years later in 2018.  Finally, Taylor concedes that the law does not require that she receive notice of her termination, and she does not allege or point to evidence suggesting that any employment agreement required such notice.  Her assertion that the length of her employment at Cardinal Health would mandate the courtesy of notice does not create a triable issue of fact with respect to whether Cardinal Health's failure to formally notify her of her termination was motivated by racial or gender discrimination.

Taylor has not created a genuine issue of material fact as to any of the irregularities she describes.  No reasonable juror could find, on the evidence presented by Taylor, that any of these irregularities were motivated by discriminatory animus on the part of the hiring decision-makers at Cardinal Health.  Taylor has not pointed to sufficient evidence to create a genuine

dispute of material fact that she was significantly more qualified than Russell for the Pharmacy Manager position, and Taylor's other proffered evidence of discrimination is not probative. Therefore, the Court **GRANTS** Cardinal Health's Motion with respect to Taylor's failure-to-hire claims under the THRA.

    B. *PRN Status Termination*

Cardinal Health correctly points out that Taylor's Response to the instant Motion concentrates on the failure to hire claim. (ECF No. 52 at PageID 750.) Taylor's only mention of the termination of her PRN employment is within the context of attempting to provide probative evidence of discrimination when Cardinal Health did not select her for the position of Pharmacy Manager. (ECF No. 43 at PageID 611.) "A non-moving party's failure to address an argument in its opposition brief waives the argument." Burley v. Quiroga, CASE No. 16-cv-10712, 2019 WL 2208560, at *8 (E.D. Mich. Jan. 25, 2019) (citing Maher v. Int'l Paper Co., 600 F. Supp. 2d 940, 948–49 (W.D. Mich. 2009)). Because Taylor's Response does not attempt to establish that Cardinal Health's proffered reason for her termination (her lack of availability to work) constitutes pretext, Taylor has waived that argument and the Court **GRANTS** Cardinal Health's Motion with respect to Taylor's termination claim under the THRA.

**IV.   CONCLUSION**

For each of the reasons set forth above, Cardinal Health's Motion for Summary Judgment is **GRANTED**. Taylor's THRA claims against Cardinal Health are **DISMISSED WITH PREJUDICE**.

**SO ORDERED**, this 30th day of August, 2021.

                                                  /s/ Jon P. McCalla
                                                  JON P. McCALLA
                                                  UNITED STATES DISTRICT JUDGE